## BEECHER *v.* NEWTON.

1. A power is an authority enabling one person to dispose of an interest which is vested in another.

2. Where the owner of lands sells and by warranty deed conveys the same to another, taking from the latter his contemporaneous deed to the lands to secure his notes given for the deferred payments of the full purchase-money thereof, a provision in such security deed, by which the grantor agrees that any and all moneys received from the sale of turpentine or timber on said lands, prior to the payment of the first of said notes, shall be paid to the grantee in the security deed and be credited on said note, is a reservation by the grantor of a power to sell the turpentine and timber on said lands, and to receive the purchase-money thereof which is to be paid by him to his grantee upon said note given in part for the purchase-money of said land.

3. A sale by the grantor in such security deed of the lands therein embraced, and his conveyance thereof to another by warranty deed, did not amount to an exercise of the power referred to in the second headnote, there being no reference in his deed to said power, to the instrument creating it, to the subject-matter thereof, or other indicia to show

. that it was his intention to exercise the power by his deed, and he having an equity of redemption in said lands which would pass under his deed.

4. One claiming title to the timber on said lands, under mesne conveyances from the purchaser thereof from the grantor in said security deed, acquired no title thereto; and the court properly enjoined him from working such timber for turpentine purposes, at the instance of the plaintiff who acquired title to said lands under one who purchased the same at a sale by the executor of the grantee in said security deed under the power of sale therein contained.

No. 3901. DECEMBER 13, 1923.

Injunction. Before Judge Highsmith. Appling superior court. June 22, 1923.

On February 11, 1918, Mrs. M. A. Newton by her warranty deed conveyed to H. C. McCrackin certain described real estate. On the same day McCrackin executed to Mrs. Newton his deed to the same land, to secure his indebtedness to her, evidenced by his two notes for $200 each, with 8 per cent. interest from date, and falling due respectively January 1, 1923, and January 1, 1924. The interest on these notes was represented by coupons thereto attached. In this security deed McCrackin agreed "that any and all moneys received from the sale of turpentine or timber on said property, prior to the payment of the principal note first falling due as above mentioned, shall be paid to the party of the second part and credited on said principal note." This deed further provided, that, in default of the payment of the taxes on this property, the principal of said debt, or said interest coupons, Mrs. Newton could sell said land at public outcry after advertising the same as provided in that instrument. Both of the above deeds were duly recorded. Mrs. Newton died; and -on March 17, 1923, H. C. Newton, as her executor, after due advertisement, sold the land under the power of sale, for default by McCrackin in the payment of taxes and interest on the first principal note due January 1, 1923, for the sum of $1,000.00, to Mrs. G. N. Mims. On March 27, 1923, Mrs. Mims by her warranty deed conveyed the land to Newton. This deed was duly recorded. On July 24, 1918, McCrackin for a consideration of $7,350, conveyed the land by his warranty deed to one Fleming. On October 8, 1918, Fleming in consideration of $1,100 leased to one Truitt the timber on all that tract of land, being part of land lot 140 in the second land district of Appling County, Georgia, containing 245 acres, more or less, and land lot

141 in said district, in one body, bounded north, east, and west by the original land lines, and south by lands of J. C. Black. This lease was recorded the day of its execution. On January 2, 1923, Fleming executed to Truitt a lease for the purpose of correcting the description of the lands embraced in the lease of October 8, 1918; and in the new lease recited that it was the purpose and intention of the lease of October 8, 1919, to convey 245 acres of lot 240 and the whole of lot 241 in said district, and that the new lease was made for the purpose of correcting the former lease. Truitt by his bill of sale, in consideration of $9,600, conveyed to G. P. and F. S. Shingler, with other property, said lease of October 8, 1918, from Fleming to him. This bill of sale was recorded on October 9, 1919. G. P. Shingler by his bill of sale, "for the consideration of ten dollars and other good and valuable consideration," conveyed to L. H. Beecher, among other property, said lease from Fleming to Truitt. This bill of sale was properly executed and recorded.

On May 15, 1923, Newton filed his petition against Beecher, to enjoin the latter from turpentining the timber on these lands. On the hearing the plaintiff introduced evidence to the effect that the security deed from McCrackin to Mrs. Newton was for the full amount of the purchase-money of these lands; that he had been in possession of them since he obtained the deed from Mrs. Mims thereto; that Beecher was working the timber on these lands for turpentine purposes; that Beecher had tried to lease the timber on these lands from plaintiff for turpentine purposes; that plaintiff objected to Beecher's working this timber for turpentine purposes, when the latter agreed to quit working the same for turpentine purposes; but notwithstanding his promise to quit working the same, Beecher was turpentining this timber; that these lands were unimproved and chiefly valuable for turpentine and timber purposes; that Beecher was improperly working the timber so as to destroy the same, and that when the timber was destroyed the land would be without value. The defendant introduced evidence to prove that the timber on these lands was being worked for turpentine purposes by Shingler and Beecher, under the supervision of the defendant; that plaintiff objected to the defendant working the same; that the defendant informed plaintiff of his claim to said timber; that the defendant offered a stated price for the right

to work the timber for 1923; that Newton agreed to accept this price, but afterwards told the defendant that he had decided that he did not want to lease the timber; that they agreed upon a price for the timber, and they were to come to Baxley at a certain time and fix up the papers, but the plaintiff did not appear; and that the defendant was properly working the timber.

The trial judge enjoined the defendant "from working the timber on the land in question, as prayed for, pending the final trial of said case, with the condition that, in the event plaintiff shall not finally prevail therein, defendant may set up and recover upon the final trial any damages, if any, that defendant may have sustained by reason of this injunction being granted, the same to operate as a lien upon the land in question." To this judgment the defendant excepted upon the grounds: (1) that under the evidence and pleadings in the case the plaintiff was not entitled to an injunction; (2) that under the law the plaintiff was not entitled to injunction; (3) that under the evidence title to the timber was shown to be in the defendants; (4) that, if the court should have found that the timber was not being worked in the usual and customary manner, he should have enjoined as to that specific timber; (5) that the court was without authority to grant an injunction upon the terms named in the order; and (6) that under the deed from Mrs. Newton to McCrackin and the security deed from McCrackin to Mrs. Newton, McCrackin had the right to sell said lands to Fleming, who could lawfully lease the timber for turpentine purposes.

*V. E. Padgett,* for plaintiff in error.

*W. H. Watson,* contra.

HINES, J. (After stating the foregoing facts.)

1. Where the owner sells and conveys lands to another by a warranty deed and takes from the latter a contemporaneous deed to the same to secure the entire purchase-money, does a provision . in the security deed, wherein the maker agrees that any and all moneys received from the sale of turpentine or timber on said lands prior to the payment of the note first falling due, and given for part of the purchase-money, shall be paid to the seller and be credited on said note, authorize the maker of the security deed to sell and convey these lands to a third person so as to defeat the title of an assignee of his grantor to the timber thereon, where such grantor did not join in the sale, did not receive any part of the

purchase-money paid by such third person to the vendor in the security deed, and did not consent to such sale, otherwise than by taking the security deed with the above provision in it? In other words, did the vendor in the security deed, by this provision, reserve to himself the authority to sell the turpentine and timber upon the lands therein embraced, and in the exercise of this power did he convey the timber and the right to work the same for turpentine to the purchaser from him of these lands? A power is an authority enabling one person to dispose of an interest which is vested in another. Burleigh v. Clough, 52 N. H. 267 (13 Am. R. 23). It may be granted or reserved either expressly or impliedly. *Fletcher* v. *American Trust &c. Co.*, 111 *Ga.* 300 (36 S. E. 767, 78 Am. St. R. 164) ; 31 Cyc. 1044, note 48. This provision declares that all moneys received from the sale of turpentine or timber shall be paid to the grantee in the security deed. This language necessarily implies that the grantor in the security deed reserved to himself the power to sell the turpentine and timber on these lands. It refers in so many words to a sale of these things. Besides, he reserved the right to receive the money arising from the sale of these articles. The language, "any and all moneys received from sale of turpentine or timber," means moneys received by him. If it does not mean this, it would not have been necessary to provide that they shall be paid to the grantee in the security deed. So we reach the conclusion that the grantor in the security deed reserved to himself the power to sell the turpentine and timber, and to receive the moneys paid for their purchase, subject to the trust imposed on him to pay them to his grantee, and have them applied to the payment of his note for the purchase-money of the lands first falling due.

2. Did the grantor in the security deed exercise this power by his sale and conveyance of these lands to Fleming? The timber growing thereon was part of the realty. *Coody* v. *Gress L. Co.*, 82 *Ga.* 793 (10 S. E. 218) ; *Corbin* v. *Durden*, 126 *Ga.* 429 (55 S. E. 30). So, his conveyance of these lands was as much a conveyance of the timber thereon as the soil in which the timber was growing. Clearly, this sale of the ground was subject to the security deed. Was it the intention of the grantor to sell the soil subject to his security deed and the timber free from that deed? The vendor in the security deed had an interest in these lands and the timber

on them, and a power over the timber; and his conveyance of the lands, without reference to the power, and without mention of the timber, will be applied to the interest and not to the power, in the absence of circumstances showing a different intention. *Terry* v. *Rodahan,* 79 *Ga.* 278 (5 S. E. 38, 11 Am. St. R. 420) ; *New England Mortgage Sec. Co.* v. *Buice,* 98 *Ga.* 800 (26 S. E. 84) ; *Middlebrooks* v. *Ferguson,* 126 *Ga.* 232 (55 S. E. 34) ; *Mahoney* v. *Manning,* 133 *Ga.* 748 (56 S. E. 1082). Here there is no reference to the power, there is no mention of the timber, which is the subject-matter of the power, and the instrument can have effect and operation without regard to the power. There are no other indicia which make plain the intention of the grantor to sell and convey the timber under his reserved power in the security deed. Considering all the circumstances, the intention is doubtful, and this doubt will prevent the instrument from being deemed an execution of the power. 21 R. C. L. 795, § 28. So we are of the opinion that the deed from McCrackin to Fleming was not an exercise of this power, and did not have the effect of conveying the timber on these lands to Fleming free from the incumbrance of the security deed. This being so, those under whom the defendant claims title to the timber did not have title thereto, but the title thereto passed to the purchaser of these lands under the sale thereof had under the power of sale in the security deed, and became vested in the plaintiff under his deed from said purchaser.

3. This conclusion makes it unnecessary to decide other questions raised in the record.

*Judgment affirmed. All the Justices concur.*